Filed 8/10/22 In re V.G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re V.G., et al., Persons Coming Under Juvenile Court Law. | B312283 |
| —————————————————— LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. R.G. et al., Defendants and Appellants. | (Los Angeles County Super. Ct. No. 20CCJP02413 B, C, D) |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge. Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendants and Appellants.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

——————————————

## INTRODUCTION

Father appeals from the juvenile court's exit and custody orders, after the court found jurisdiction over his children six months earlier based on father's domestic violence and child abuse. The orders required father's visitation with the three children to be monitored. Father argues the monitoring condition was not supported by substantial evidence. We affirm as father has forfeited this argument.

## FACTUAL AND PROCEDURAL BACKGROUND

The parents have four children together, ages 16, 14, 11 and 9[1] Father also has an older child by another woman; this older half-sibling is mentioned in the jurisdictional findings, but is not part of this dependency case. Only the three youngest children are involved in the present appeal.

The parents were married in 2010. In 2020, mother asked father for a divorce and began seeing another man.

### 1.    Jurisdiction

On September 22, 2020, the juvenile court sustained a Welfare and Institutions Code section 300 petition and found jurisdiction over the four children based on father's domestic violence toward mother, father's physical abuse of the children, and father's inappropriate conduct toward his oldest child (the half-sibling).[2] The sustained allegations included: (1) in April 2020, while in front of two of the children, father smashed the windows of a car occupied by mother, injuring her, and then

---

[1]    These are the ages of the children at the time jurisdiction was terminated in March 2021.

[2]    All further undesignated statutory references are to the Welfare and Institutions Code.

attacked and injured her boyfriend (who was also in the car) with a metal bat; (2) on multiple occasions, father pushed mother, threw her against a wall, threw objects at mother, grabbed mother's hair, and struck mother; (3) on multiple occasions, father pulled his 14-year-old son's hair, slammed him into a wall, threw him to the ground, kicked him, slapped and punched him, struck him with a belt, and made him kneel while holding a heavy cross until he fell asleep; (4) on multiple prior occasions, father grabbed the two youngest children by their hair and forced them to their knees; and (5) father excluded his oldest child (the half-sibling) from the home and made him sleep outside.

The juvenile court ordered the children removed from father's physical custody and placed with mother.[3]  The court granted mother family maintenance services, and ordered father to participate in a domestic violence for perpetrators program, a parenting program, an anger management program, individual counseling to address case issues, and on-demand drug testing upon reasonable suspicion of drug or alcohol use.  The court granted father monitored visitation with the children.

In November 2020, the court granted mother's petition for a domestic violence restraining order against father.  At the hearing, father continued to deny the April 2020 domestic violence involving the metal bat.

## 2.    *Reunification Period*

By the time of the six-month review hearing, father was participating in the court-ordered programs, except for anger

---

[3]    The 16-year-old was eventually placed in the home of the older half-sibling, and was not a part of the custody and visitation order.  The three youngest children remained in mother's custody.

management.  Father had not visited his three youngest children because they did not want to see him.  Mother reported father interfered with her custodial responsibilities by making medical and dental appointments for the children without consulting her, and providing misinformation to the children's medical providers to prevent her from accessing her oldest child's records.  Police arrested father twice for violating the restraining order.

### 3.    *Exit Order*

On March 23, 2021, the juvenile court held a section 364 status review hearing.  DCFS recommended that the juvenile court terminate its dependency jurisdiction over the three younger children and issue a final custody order that granted mother and father joint legal custody of the children, mother sole physical custody, and father monitored visitation.  Counsel for the children asked the court to grant mother sole legal and physical custody.  Father's counsel argued that the court should maintain jurisdiction for another six months for father to complete his case plan and for DCFS to continue encouraging the children to visit father.

The juvenile court found the conditions that justified the initial exercise of jurisdiction no longer existed and were not likely to exist if supervision was withdrawn.  The court terminated its jurisdiction over the children.  The court granted mother sole legal and physical custody of the children and father monitored visitation.  The court observed father was only halfway through his domestic violence program and had not accepted responsibility for his violent conduct toward mother (as shown by his counsel's argument at the restraining order hearing where father continued to deny the April 2020 domestic violence had occurred).

4

As for father's visitation, the juvenile court initially stated monitored visits were to take place at a minimum of two to three times per week, and for each visit to be two to three hours in duration. In response, mother's counsel informed the court that the children were terrified of father because they believed father was stalking mother. Mother's counsel asked for visits initially to occur telephonically. Children's counsel joined in this request based on the same concerns. Children's counsel requested visitation be limited to once a week and be monitored by a professional monitor.

Father's counsel objected to telephonic visitation in lieu of in-person visits. He asked for in-person visits two to three times per week for two to three hours. Father's counsel stated, "Possibly a professional monitor would likely be needed as there is still the restraining order and the discord between the parents." Father made no request for the court to grant him unmonitored visitation. On the contrary, his counsel's suggestion that a professional monitor was likely necessary in order for father to comply with the restraining order showed that father understood the visits would be monitored.

Following argument, the juvenile court stated it was "concerned about the father using the visits to get at mother, to stalk her, to gain information. The father has proven himself to be very predatory . . . towards the mother." The court ordered that visitation be limited to one time per week by phone, professionally monitored, and paid for by father. The court stated that this would prevent father from watching mother as she brought the children to and from visits, and speaking inappropriately to the children during visits. The court also ordered father to complete his domestic violence program, anger

5

management training, and individual counseling to the point that he acknowledges his role in the domestic violence toward mother.

The court directed the parties to prepare a proposed custody order. The court stayed its order terminating jurisdiction pending receipt of the proposed custody order. On April 5, 2021, the juvenile court issued the juvenile custody order, providing mother sole legal and physical custody of the children, and father weekly visits "by electric [*sic*] means, phone, or web-meeting," to be monitored by a professional monitor.

On April 21, 2021, father timely appealed from the orders made at the March 23, 2021 hearing.

## *DISCUSSION*

Father contends the visitation orders' requirement that visitation be supervised was not supported by substantial evidence. In its brief, DCFS responds father forfeited his challenge to the monitoring requirement because father did not request unmonitored visits, nor did he object when the court ordered monitored visitation. In fact, father's counsel conceded a professional monitor would likely be necessary due to the existing restraining order against father and the discord between the parents. Father did not file a reply brief and has left DCFS's forfeiture argument unchallenged.

"A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as 'waiver,' applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222.) For example, in *In re Anthony P.* (1995) 39 Cal.App.4th 635, at a section 366.26 hearing the mother did

6

not raise the issue of sibling visitation.  On appeal, the mother contended the order terminating her parental rights should be reversed because the juvenile court failed to provide for ongoing sibling visitation in the permanent plan.  The appellate court concluded the mother waived her right to appeal that part of the order because she failed to raise the point below.  (*Id*. at p. 641.)

We agree father has forfeited his challenge to the monitored visitation order.  DCFS acknowledges the appellate court has discretion to excuse forfeiture under limited circumstances not present here.  We decline to address the merits because father's appeal neither presents a pure question of law, which can be decided based on undisputed facts (see *In re Nickolas T*. (2013) 217 Cal.App.4th 1492, 1501), nor involves an "important legal issue" (see *In re S.B*. (2004) 32 Cal.4th 1287, 1293, superseded on other grounds by statute as stated in *In re S.J*. (2008) 167 Cal.App.4th 953, 962).

### *DISPOSITION*

The juvenile court's orders are affirmed.

RUBIN, P. J.

WE CONCUR:

BAKER, J.          MOOR, J.

7