Filed 7/22/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re NICKOLAS T., a Person Coming Under the Juvenile Court Law. | |
| | D063010 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ003553) |
| v. | |
| B.T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

B.T. appeals a dispositional order denying her request for custody of her son, Nickolas T., who was living with his maternal aunt pursuant to a guardianship order from a Mississippi dependency court.  B.T. contends the court erred when it did not consider her request for

placement under Welfare and Institutions Code section 361.2,[1] which requires the court to place the child with the noncustodial parent unless it finds that placement would be detrimental to the child, and instead shifted the burden of proof to the parent to show that such placement was in the child's best interests. B.T. asserts this error despite agreeing to a best interests standard and objecting to a finding of detriment at trial.

We conclude that the court erred when it acquiesced to the parties' theory that because a permanency plan of guardianship had been selected for Nickolas in 2006 through Mississippi dependency proceedings, his new California dependency case was also at the postpermanency stage. Instead, we conclude that once the State of Mississippi declined jurisdiction and the juvenile court found that the child was described by section 300, the court should have proceeded under section 361, which governs removal of the child from his parent or guardian, and section 361.2, which governs placement of a child who has been removed from his parent or guardian. We further conclude that the juvenile court is required to consider a noncustodial parent's request for custody under section 361.2, subdivision (a), even if that parent was the subject of a finding of detriment in an earlier dependency case and did not retain the right to physical custody of the child. However, the error was not prejudicial to B.T., and we affirm the order denying her request for placement.

FACTUAL AND PROCEDURAL BACKGROUND

Nickolas T., the eldest of B.T.'s nine children, was born in 1997. B.T. was then 14 years old. In 2001, pregnant, homeless and without means to support her children, B.T. voluntarily placed Nickolas, who was not yet three and a half years old, and his siblings in the

_____

[1] Unless otherwise specified, all further statutory references are to the Welfare and Institutions Code.

custody of the Hinds County, Mississippi Department of Human Services (MDHS). MDHS placed the children with their maternal grandmother and closed the case in 2002.

B.T. was subsequently incarcerated on charges of strong arm robbery, motor vehicle theft and receiving stolen property. In 2004, MDHS reopened the dependency case. The Mississippi Youth Court (Youth Court) then placed Nickolas and several of his siblings in Louisiana with their maternal aunt, Faith W., pursuant to the Interstate Compact on Placement of Children (ICPC). Paternal relatives gained custody of two other siblings.

In 2006, the Youth Court placed Nickolas and his siblings[2] in the legal custody of his maternal aunt, Faith, relieved MDHS of the children's care, custody and supervision and allowed MDHS to close its case in the matter. The order further stated B.T. was allowed to petition the court to regain custody of her children "when she has proven that she has the means to care for them."

B.T. was released from prison in 2008. She subsequently married, obtained employment, gave birth to twins and regained custody of a child through family court proceedings. Another child, who had a medical condition, lived nearby with his paternal grandmother. B.T. saw him frequently, helped pay for his expenses and attended all his medical appointments and hospitalizations. B.T. did not seek to regain custody of Nickolas and his four siblings. She said the children loved living in California and Faith was able to

_____

[2] Although the Mississippi court records that are in this record concern only Nickolas and two of his siblings, the record shows that Faith and her husband, D.W. (the W.'s), were caring for Nickolas and four of his siblings. Without providing any documentation, the W.'s told the social worker that "Louisiana Child Welfare Services" granted legal guardianship of the children to them in 2004. If so, it appears the children's dependency case remained under the jurisdiction of the Youth Court, which granted "legal custody" of the three children to Faith in 2006. The parties do not dispute the W.'s status as the children's legal guardians.

provide opportunities to them that she could not. B.T. visited the children in California every year and remained in close contact with them.

In May 2012, Nickolas told a teacher the W.'s hit him and his siblings with an extension cord on their palms and D.W. punched and slapped him and his brothers in the face. Nickolas was afraid to return home. He had a cut on his right thumb, which was swollen and sore. Nickolas said the W.'s had hit him "all [his] life." Nickolas's maternal grandmother, who lived in the home, confirmed the W.'s disciplined the children by hitting them on their hands with an extension cord.

According to Nickolas, B.T. knew that the W.'s were hitting him. During B.T.'s last visit to California, Nickolas was sent home from school. When Faith came home, she hit Nickolas with a pole on his back, arms and legs. B.T. yelled at Faith to stop hitting him. Nickolas said his mother did not like his aunt hitting him but whenever he was in trouble, she would say, "You get him [Faith]." B.T.'s husband, whom Nickolas had never met, would take the telephone and tell him, "I'm going to take care of you when we get down there and you had better best believe that."

B.T. denied she saw Faith hitting Nickolas with a pole. B.T. said Faith provided a good home for her children. Nickolas had been acting out in school. Faith said she did not hit Nickolas. B.T. believed her sister.

The W.'s denied hitting Nickolas and characterized him as "the problem child." Faith said Nickolas was a great kid and they loved him, but he was getting into trouble at home and at school. He had a lighter in his pocket; he was found at a girl's home and stayed out past his

4

curfew. According to B.T., Nickolas made the allegations a week after they told him he was going to spend the summer in Mississippi with B.T.

Nickolas's siblings denied any physical abuse. During child welfare investigations in 2006 and 2010, two other children in the home said they were hit with an extension cord or belt. They recanted the allegations when interviewed. According to Nickolas, during those investigations Faith promised to take the children to Disneyland if they did not tell the social worker about the W.'s use of physical discipline. When interviewed about the current allegations, one of Nickolas's siblings, then six years old, said she learned that morning the family was going to Disneyland. She denied she or her siblings were spanked, hit or physically harmed in any way.

The social worker said Nickolas was a very sweet boy who did not want to return to the W.'s home. Nickolas believed that they would hit him again. Nickolas did not want to live with B.T. in Mississippi. He said his mother was trying to get her life together but was "not there yet."

The San Diego County Health and Human Services Agency (Agency) detained Nickolas in protective custody and filed a petition alleging physical abuse under section 300, subdivision (a). Nickolas's siblings remained in the home under a voluntary services plan.

B.T. requested custody of Nickolas. The Agency asked the court to find it would be detrimental to Nickolas to place him in her care and to order a permanent plan of long-term foster care for Nickolas. The social worker reported that Nickolas was doing well in foster care with a nonrelative extended family member. He was very happy. Nickolas was a talented

5

football player and had a football scholarship to a private school. He did not want to return to his mother's home in Mississippi.

The court continued the proceedings to communicate with the Mississippi court pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). (Fam. Code, § 3400 et seq.) The State of Mississippi declined jurisdiction.

The W.'s decided not to reunify with Nickolas and asked the court to terminate their guardianship. The Agency filed an amended petition under section 300, subdivision (b), citing excessive discipline and the breakdown in the relationship between Nickolas and the W.'s.

The court found that Nickolas was described by section 300, subdivision (b) and dismissed the count alleging physical abuse. With the consent of the parties, the court terminated the guardianship and set a contested disposition hearing. The parties agreed it was B.T.'s burden to show that returning Nickolas to her home was in his best interests.

At the disposition hearing on October 22, 2012, the court asked the Agency why it did not have to establish that placement with B.T. would be detrimental to Nickolas. County counsel said the Mississippi dependency court had already made "something akin to a detriment finding" and therefore B.T. had the burden of showing it was in Nickolas's best interests to be returned to her care. The parties agreed "best interest of the child" was the appropriate standard.

The court admitted the Agency's reports in evidence, including a report from the Mississippi guardian ad litem who investigated a recent custody dispute in which B.T. had regained custody of a son from his father. B.T. did not present affirmative evidence or cross-examine the social worker.

6

The court found that B.T. did not show it was in Nickolas's best interests to be placed with her at that time. It further found that B.T. had not rebutted the Youth Court's finding[3] it would be detrimental to place Nickolas with her. The court reiterated the Youth Court's finding and found by clear and convincing evidence that return to B.T. would create a substantial risk of detriment to Nickolas.

B.T. objected to the detriment finding. The court agreed the detriment finding was not required. The court said B.T. did not establish it was in Nickolas's best interests to be placed in her care because Nickolas was adamant he did not want to move to Mississippi and B.T. continued to deny he had suffered significant physical abuse. The court was also troubled by the threatening tone of B.T.'s husband's remarks to Nickolas. Noting that B.T. was not requesting services "under section 366.3," the court selected long-term foster care as Nickolas's permanent plan and set a postpermanency plan review hearing.

DISCUSSION

A

*The Parties' Contentions*

B.T. contends the court erred when it did not consider her request for custody of Nickolas under section 361.2. She argues the Agency has the burden to prove that placement

---

3     Two orders from the Youth Court proceedings are included in this record: an order from a 12-month permanency hearing that was held on May 17, 2005 (2005 Order), and a rehearing order dated February 23, 2006. The 2005 Order states "removal from the home was necessary in that continuation in the home would be contrary to the children's welfare" and "continuation of the children's residence within their own home would be contrary to the welfare of the children and that placement or continued placement of the children in foster care is in the best interest of the child." This language mirrors the minimum federal standard for the removal of a child from his or her home. (See 42 U.S.C. § 672(a)(2)(A)(ii).) For the purposes of this appeal, we accept this finding as akin to a detriment finding under California law. (§§ 361, subd. (c) & 361.2, subd. (a).)

7

with the parent would be detrimental to the child, and the court erred when it required her to show that placement was in the child's best interests. B.T. contends the error was prejudicial because the record lacks any evidence to show that placement with her would be detrimental to Nickolas.

The Agency asserts B.T. forfeited her right to claim error on appeal by agreeing at trial she had the burden to prove that placement with her was in Nickolas's best interests. On the merits, the Agency argues that because Nickolas had been removed from B.T.'s custody in an earlier dependency proceeding and the W.'s guardianship had been terminated, sections 361, governing removal, and 361.2, governing placement, did not apply. Alternatively, the Agency, relying on *In re A.A.* (2012) 203 Cal.App.4th 597 (*A.A.*), argues that even if sections 361 and 361.2 applied, B.T. was not entitled to consideration for placement under section 361.2, subdivision (a) because Nickolas had been removed from her care and she did not retain the right to physical custody.

B

*Forfeiture*

"A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221 (*Dakota H.*).) Generally, a reviewing court will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so any error may be corrected. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*).)

We acknowledge the Agency's argument concerning forfeiture. However, application of the forfeiture rule is not automatic. (*In re V.F.* (2007) 157 Cal.App.4th 962, 968 (*V.F.*).) Here, the parties agreed that section 361.2 did not apply and persuaded the juvenile court to apply a different standard and burden of proof, thus altering the statutory framework that governs placement of a dependent child under the California dependency scheme. There is no dispute about the standards and procedures that were employed by the court. When the facts are not disputed, the effect or legal significance of those facts is a question of law. (*Ibid.*) Further, the lack of adherence to the California dependency scheme may have adverse implications for the child's permanency and stability, which are of paramount importance, and the parent's interest in the child, which is fundamental. (*S.B.*, *supra*, 32 Cal.4th at p. 1293; *Dakota H.*, *supra*, 132 Cal.App.4th at p. 223.) We therefore exercise our discretion to review the issues to address the legal issue raised in this case. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [exercising its discretion to review the issue to foreclose any auxiliary claims by the parent].)

Because the question is one of law, we review the claimed error de novo. (*Dakota H.*, *supra*, 132 Cal.App.4th at p. 222.)

C

*Nickolas's California Dependency Proceeding Was Not*
*a Continuation of His Youth Court Case*

As the Agency acknowledges, the record does not contain much information about Nickolas's Youth Court proceedings.[4] In 2004, the Youth Court found that continuation in the

---

4    The Youth Court proceedings concerned Nickolas and two of his siblings. Because this case pertains only to Nickolas, for brevity, we do not refer to the siblings.

9

home would be contrary to Nickolas's welfare, removed him from B.T.'s custody and placed him with the W.'s, who were then living in Louisiana. In 2005, in the wake of Hurricane Katrina, with permission from MDHS, the W.'s moved to California with Nickolas and his siblings, uncle, cousin and grandmother. On February 23, 2006, the Youth Court transferred Nickolas's care and custody from MDHS to Faith, relieved MDHS of any duty to supervise Nickolas and allowed it to close its case. B.T. retained some parental rights, including the express right to petition the Youth Court to regain custody of Nickolas on a showing she could provide for him.

In 2012, the Agency filed a section 300 petition alleging the W.'s had physically abused Nickolas. The juvenile court properly proceeded under the UCCJEA and contacted the Youth Court. Mississippi declined to exercise jurisdiction. (See Fam. Code, §§ 3424, 3422 & 3421.) The juvenile court sustained the amended petition and set a contested disposition hearing under section 361. At a pretrial conference, the parties informed the court that at a settlement hearing with another judge, the court and parties had determined the case was proceeding under section 300 with respect to the guardians and under section 387[5] with respect to B.T. and B.T. had the burden to show returning Nickolas to her care was in his best interests. At the disposition hearing, the court denied B.T.'s request for placement and implemented a permanent plan of

---

5      Section 387, subdivision (a) states: "An order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, . . . shall be made only after noticed hearing upon a supplemental petition." "The supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or the protection of the child . . . ." (§ 387, subd. (b).) Even if it were appropriate to file a section 387 petition before the disposition hearing on a section 300 petition, the record does not indicate that the social worker filed a section 387 petition in this case.

long-term foster care for Nickolas, which is not a statutory option at an initial disposition hearing. (See §§ 360, 361, 361.2 & 361.5; Cal. Rules of Court, rule 5.695.) The court also noted that B.T. was not requesting "[section] 366.3 services," which are services that may be available to a parent during the postpermanency review period.

Contrary to the Agency's argument on appeal, Nickolas's dependency proceeding was not an action by the W.'s to terminate their guardianship of Nickolas (§ 728),[6] by the parent to modify a prior court order (§ 388) or by the Agency alleging the prior disposition has been ineffective in protecting the child (§ 387). This case was not, as the Agency implied at trial, a continuation of Nickolas's Youth Court proceedings. Had Nickolas been the subject of earlier dependency proceedings in California resulting in the selection of a guardianship at a section 366.26 hearing, the court would have continuing jurisdiction and would have been able to proceed under section 366.3. However, the Agency cites no authority that would permit a California juvenile court to conduct a new dependency proceeding as if it were a continuation of a child's out-of-state dependency proceeding, and we have not located any such authority in our independent research.[7] Instead, this case arose when the Agency substantiated an allegation of physical abuse to Nickolas and filed a petition under section 300, subdivision (a),

---

6       Removal from the custody of a guardian and termination of guardianship are not commensurate. The party seeking to terminate or modify a guardianship must file a motion and provide notice to the parties and the court that made the original appointment. If the agency recommends termination or modification of a guardianship, the court must order the agency to file the requisite motion. A hearing on the motion may be heard simultaneously with any regularly scheduled dependency proceeding. (§ 728; Cal. Rules of Court, rule 5.620(e).)

7       Had California been supervising Nickolas's placement with the W.'s at the State of Mississippi's request under the ICPC, Mississippi would have retained jurisdiction of the case. (Fam. Code, § 7901, arts. 3 & 5.)

11

later amended to section 300, subdivision (b). Thus, after Mississippi declined jurisdiction, the juvenile court was required to adhere to California statutory procedures governing a new dependency action, including initial disposition and placement.

If the court removes a child from the custody of a parent or guardian with whom the child resided at the time the section 300 petition was initiated (§ 361, subd. (c)) (and does not order a plan of guardianship for the child (§ 360, subd. (a))), it is then required to determine the child's placement under section 361.2. "[S]ection 361.2 governs the child's temporary placement with the noncustodial parent and the provision of reunification services to the parents, and also permits the court to grant legal and physical custody of the child to the noncustodial parent." (*V.F.*, *supra*, 157 Cal.App.4th at p. 969, superseded by statute on other grounds, as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57-58, 81.) Under section 361.2, subdivision (a), the court must "first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child."[8] (§ 361.2, subd. (a).) If that parent requests custody, the court is required to place the child with that parent unless it finds that such placement would be detrimental to the child's safety, protection or physical or emotional well-being. (*Ibid.*)

Relying on *A.A.*, the Agency argues section 361.2 did not apply to B.T. because the Youth Court had previously removed Nickolas from her care on a finding of detriment and she did not retain the right to custody. *A.A.* held that to be considered for placement under section

_____

[8] For convenience, we refer to " 'a parent [of the child] with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300' " as a " 'noncustodial parent.' " (*V.F.*, *supra*, 157 Cal.App.4th at p. 969, fn. 4.)

361.2, subdivision (a), the noncustodial parent must retain the right to the child's physical custody and must not have been the subject of a previous detriment finding and removal. (*A.A.*, *supra*, 203 Cal.App.4th at p. 608.)  However, the procedural posture and parent's circumstances in *A.A.* are far different than those presented here.

In *A.A.*, the juvenile court removed the child from the custody of her mother, who had been arrested and incarcerated for five years on federal drug charges.  The mother also had a history of substance abuse and mental illness.  (*A.A.*, *supra*, 203 Cal.App.4th at pp. 601-602.)  The juvenile court placed the child with his father.  At the six-month review hearing, the court awarded sole legal and physical custody to the father and dismissed the case.  One month later, the child was physically abused by his father and the Agency filed a new petition alleging physical abuse and neglect by the father, and neglect and no provision for support by the mother.  (*Id.* at p. 602.)  The mother remained incarcerated on the charges and did not request custody of the child at the new disposition hearing.  Eighteen months later, on appeal from an order terminating her parental rights, the mother asserted the court erred when it did not consider placing the child in her care under section 361.2, subdivision (a), arguing she was a noncustodial parent who was able to arrange for the child's care with family members during her incarceration.  (*A.A., supra*, at pp. 603-604; see *V.F.*, *supra*, 157 Cal.App.4th at p. 966; *In re Isayah C*. (2004) 118 Cal.App.4th 684, 700.)

The reviewing court held that the mother was not entitled to consideration for placement under section 361.2 because she was "an incarcerated parent who has previously been the subject of a removal order due to acts or omissions by that parent that brought [the] child within the description of section 300, and whose custody right has not been restored."  (*A.A.*,

13

*supra*, 203 Cal.App.4th at p. 608.)  The Agency seeks to apply that principle to any parent who has previously been the subject of a detriment finding and did not subsequently regain custody of the child.  We decline to apply it here.

We begin by examining the words of the statute.  If the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs.  (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1069.)  By its plain terms, section 361, subdivision (c) concerns removal of the child from "the physical custody of [the] parents or guardian . . . *with whom the child resides* at the time the petition was initiated" (custodial parent).  (Italics added.)  Section 361.2, subdivision (a) concerns a parent "*with whom the child was not residing* at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child" (noncustodial parent).  (Italics added.)  Section 361.2, subdivision (a) does not automatically exclude from consideration for placement a noncustodial parent who has a history of incarceration, institutionalization or prior involvement with child dependency proceedings.  Instead, it directs the court to place the child with the parent unless placement would be detrimental to the child.

We are not persuaded by the analysis that in view of section 361, subdivision (c) a parent must be both "noncustodial" and "nonoffending" to be considered for placement under section 361.2.  (See *A.A.*, *supra*, 203 Cal.App.4th at p. 608.)  The term "nonoffending" does not appear in the text of section 361.2, subdivision (a).  (*V.F.*, *supra*, 157 Cal.App.4th at p. 969, fn. 4; *In re John M.* (2013) 217 Cal.App.4th 410, __ [WL 3149078, *5] (*John M.*).)  Further, section 361, subdivision (c)(1) states the court may remove the "offending parent"

14

from the home and allow the "nonoffending parent" to *retain physical custody* on a showing that he or she can protect the child from future harm. Thus, the term "nonoffending parent" in section 361 refers to a custodial parent who is not the perpetrator of any child abuse or neglect. It does not refer to a noncustodial parent under section 361.2, subdivision (a).

Under section 361.2, subdivision (a), the court focuses on the effect placement with the noncustodial parent would have on the child's safety, protection and physical and emotional well-being. If a noncustodial parent is in some way responsible for the events or conditions that currently bring the child within section 300—in other words, if the parent is an "offending" parent—those facts may constitute clear evidence of detriment under section 361.2, subdivision (a). The statute does not require the court, prior to assessing whether placement with a noncustodial parent would be detrimental to the child, to first determine whether that parent is a "nonoffending noncustodial parent" or "offending noncustodial parent," and whether that parent retains "the right to physical custody" of the child. According to the plain language of the applicable statutes, there is no need to address or litigate those issues. (§§ 361, subd. (c) [governing removal from custodial parent] & 361.2, subd. (a) [governing placement with noncustodial parent].)[9]

We find further support for this interpretation by referencing the statutory scheme as a whole. (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 844-845.) Under section 361, subdivision (c)(1), a finding of detriment is required to remove a child from the custody of an offending custodial parent. At each status review hearing, a parent who *is* the subject of a

_____

[9]    Under the removal statute, a child may not be removed from a custodial parent on a detriment finding if there are reasonable means to protect the child in the home. (§ 361, subd. (c)(1).) No such requirement applies to placement with a noncustodial parent. (§ 361.2, subd. (a).)

15

detriment finding is *presumptively entitled to custody unless the agency proves detriment*. (§§ 366.21, subds. (e) & (f), 366.22, subd. (a).)  A prior detriment finding is not given preclusive effect at subsequent review hearings.  (§ 366.22, subd. (a).)  The burden of proof to show detriment is on the agency and the fact a home is not ideal is not sufficient to establish detriment.  (*Ibid.*; *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789-790.)  Even if the noncustodial parent was the subject of a prior detriment finding and did not regain custody of the child, that parent is presumptively entitled to custody at each and every subsequent status review hearing.  Thus, the presumption for placement with a noncustodial parent at a disposition hearing is consistent with the statutory scheme as a whole, and furthers the legislative goals to maintain or place a child in the care of a parent when safe for the child, strengthen the child's relationship with siblings and other relatives, and avoid the child's placement in foster care.  (§§ 300.2, 361, 361.2, 361.3, 361.5, 366.21 & 366.22.)

Section 361.2, subdivision (a) does not mandate placement with the noncustodial parent absent a judicial examination of the circumstances of the parent and child.  In determining detriment, the juvenile court can distinguish between a case like *A.A.*—in which the parent remained incarcerated on the charges that had recently led to the removal of the child from her care—and a case in which the parent, despite earlier shortcomings and mistakes, has stabilized his or her circumstances and may be able to provide a safe home for the child.  The court may assign such weight to a prior removal order or detriment finding against a noncustodial parent as it considers appropriate in view of the parent's and child's current circumstances.[10]  In many

_____

[10]    The court should also consider the previous jurisdictional findings as to that parent, and the nature of the parent's acts and omissions that led to the earlier dependency proceedings. (§ 300.)

cases, such as in *A.A.*, the noncustodial parent's history and circumstances will clearly warrant a detriment finding. (See also *John M., supra*, 217 Cal.App.4th at p. __ [WL 3149078, *5-6].)[11] In other cases, a noncustodial parent, notwithstanding a previous removal order or detriment finding, may have remedied the conditions that led to the prior dependency proceedings, maintained a parental relationship with the child and stabilized his or her circumstances. In addition, the court may place the child with the noncustodial parent subject to the supervision of the juvenile court, and provide services to either or both parents. (§ 361.2, subd. (b); *V.F.*, *supra*, 157 Cal.App.4th at p. 969.) Thus, we are not persuaded by the Agency's argument section 361.2, subdivision (a) was inapplicable because B.T. was the subject of a prior detriment finding and did not retain the right to physical custody.

D

*There Is Substantial Evidence To Support the Court's Finding*
*that Placement with B.T. Would Be Detrimental to Nickolas*

The record shows that absent B.T.'s objection, the juvenile court would have found that placement with B.T. was detrimental to Nickolas's safety, protection or physical or emotional

---

11      We acknowledge the discussion in *John M.* about case law concerning the application of section 361.2, subdivision (a) to a noncustodial parent who is incarcerated at the time dependency proceedings are initiated on behalf of his or her child. (*John M., supra*, 217 Cal.App.4th at p. __ [WL 3149078, *5-6].) This is not the situation here. Unlike the father in *John M.*, B.T. is not incarcerated and could immediately assume custody of her child, and there are no contemporaneous findings that Nickolas comes within one or more provisions of section 300 as a result of neglect or abuse on B.T.'s part. Further, to the extent we disagree about the juvenile court's responsibility under section 361.2, subdivision (a) to consider placing a dependent child with an offending noncustodial parent if that parent requests custody, we note *John M.* recognizes "that not all bases for dependency court jurisdiction are created equal." (*John M.,* 217 Cal.App.4th at p. __ [WL 3149078, *7].) In our view, commensurate with the plain terms of the statute, it is the province of the juvenile court to decide whether placement with a noncustodial parent will be detrimental to the child, notwithstanding the basis for juvenile court jurisdiction. (§ 361.2, subd. (a).)

17

well-being. There is substantial evidence to support the court's determination. Substantial evidence is evidence that is reasonable, credible and of solid value, such that a reasonable trier of fact could make such findings. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.)

Nickolas suffered nonaccidental physical injury when the W.'s struck him on his hands with an electrical cord. He described ongoing physical abuse by the W.'s, including an incident in which Faith hit him with a pole while B.T. was present. Nickolas said B.T. yelled at Faith to stop hitting him but at other times, B.T. encouraged Faith to physically discipline him. B.T. denied witnessing the incident. Although she was made aware that medical evidence and statements by the maternal grandmother corroborated Nickolas's claims, B.T. said she did not believe her son. She told a social worker that Nickolas was lying. B.T.'s husband also made statements indicating that Nickolas would be subjected to physical punishment when he visited. Nickolas did not trust his mother to adequately care for and protect him. B.T. left Nickolas when he was three years old. He worried she did not have her life in order. Further, although a teenager's wishes do not control placement, the court properly considered Nickolas's reluctance to live with his mother and his desire to remain in San Diego, where he had lived for more than six years. (Cf. § 361.3, subd. (a)(2) [in determining whether a relative placement is suitable, the court shall consider child's wishes, if appropriate].) The record supports the finding that placement with B.T. would be detrimental to Nickolas's safety, protection or physical or emotional well-being. (§ 361.2, subd. (a).)

E

*On This Record, the Lack of Adherence to Statutory Procedure*
*Did Not Result in a Miscarriage of Justice*

The selection of a permanent plan of long-term foster care for Nickolas at the disposition hearing did not comport with statutory requirements. The court may order a plan of long-term foster care at a review hearing under section 366.21, subdivision (f) or section 366.22, or at the permanency plan selection hearing under section 366.26. It is not an option under the statutory provisions governing the initial disposition hearing. (§§ 361, 361.2 & 361.5; but see § 360 [allowing the court to order a guardianship at disposition].) B.T. does not challenge the selection of a permanency plan on appeal. The error does not mandate reversal.

B.T. expressly stated she was not asking for reunification services at that time but reserved the right to do so in the future. While under those circumstances the court should have bypassed reunification services under section 361.5, subdivision (b)(14) and set a section 366.26 hearing to select a permanency plan, B.T. was not prejudiced by the order placing Nickolas in long-term foster care. Her parental rights were not terminated. She retains the right to file a section 388 petition seeking Nickolas's return to her care on a showing of changed circumstances and best interests. Further, for a child in long-term foster care, the court is required to consider all permanency planning options for the child every six months, including whether the child should be returned to the home of a parent. The court can order reunification services on the parent's showing that an attempt to reunify is the best alternative for the child. (§ 366.3, subds. (f) & (h).) Thus, on this record, we cannot conclude there has been a miscarriage of justice necessitating reversal. (Cal. Const., art. VI, § 13.)

19

## DISPOSITION

The orders are affirmed.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.