Filed 1/25/22  In re Z.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Z.B., a Person Coming Under the Juvenile Court Law. | D079559 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520668A) |
| v. | |
| L.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Reversed and remanded with directions.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Tahra Broderson, Deputy County Counsel, for Plaintiff and Respondent.

1

L.H. (Father) appeals an order in the Welfare and Institutions Code section 300[1] proceedings for his minor son, Z.B., denying his postdisposition section 388 petition requesting placement of Z.B. with him. Father contends the juvenile court abused its discretion because it applied an incorrect legal standard in denying his section 388 petition. In particular, he argues the court incorrectly required him, as a noncustodial parent, to show that placement with him would be in Z.B.'s best interests. He asserts that the court should have instead applied the standard that we set forth in *In re Liam L.* (2015) 240 Cal.App.4th 1068 (*Liam L.*), which would have required placement of Z.B. with him unless the San Diego County Health and Human Services Agency (Agency) or Z.B.'s mother, K.K. (Mother), had shown by clear and convincing evidence that such placement would be detrimental to the child. As we explain below, we agree with Father. We therefore reverse the order denying his section 388 petition and remand the matter with directions that the court conduct a new evidentiary hearing on his petition, considering any new facts or circumstances since the original hearing.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Z.B.'s family*

In August 2018, Mother and Father began a relationship while living in Iowa and Mother became pregnant. In January 2019, Mother ended her relationship with Father and moved to California. Her new boyfriend, A.B., also moved to California and they continued their relationship there. In June, Mother gave birth to Z.B. and, as she requested, A.B. agreed to be identified as Z.B.'s father on his birth certificate. One year later, Mother

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

gave birth to twins, S.B. and L.B. Over the course of their relationship, Mother and A.B. had many incidents of domestic violence. And although they separated in August 2020, they continued to coparent Z.B. and his infant siblings.

2. *Dependency petition*

In February 2021, Mother was arrested for driving while under the influence of alcohol after she struck a parked car with Z.B. and his siblings in her vehicle. The three children were taken into protective custody and placed at the Polinsky Children's Center. The Agency filed a petition under section 300, subdivision (b)(1), alleging that Z.B. had suffered, or there was a substantial risk he would suffer, serious physical harm or illness as a result of Mother's failure or inability to supervise or protect him adequately. In particular, the petition alleged that Mother had periodically exposed Z.B. to domestic violence and had a history of caring for him while under the influence of alcohol.

At the detention hearing, the court found A.B. to be Z.B.'s presumed father, amended the petition to name Father as an alleged father, determined the Agency had made a prima facie showing on the petition's allegations, and detained Z.B. in out-of-home care. Z.B. and his siblings were placed with nonrelative extended family members (NREFMs).

3. *Jurisdiction and disposition*

In its initial jurisdiction and disposition report, the Agency stated that when its social worker first contacted Father in March, he stated that he believed he was Z.B.'s father but wanted a paternity test to confirm his belief. Father reported that Mother ended their relationship and moved away from Iowa before Z.B. was born. She sent him photographs and videos of Z.B. after

his birth, but had not allowed him to see the child except for one recent video visit. Father knew that Mother had A.B. sign a declaration stating he was Z.B.'s father. He was unsure whether he wanted his status as Z.B.'s father to be elevated, noting he did not want a legal battle with Mother and did not want to separate Z.B. from his siblings. Nevertheless, Father wanted to participate in Z.B.'s dependency proceedings and wanted to be in his life. The Agency recommended that the court find the petition's allegations true, declare Z.B. a dependent of the court, find there was no noncustodial parent willing to care for him, place him in out-of-home care, and order reunification services for Mother and A.B.

At the initial jurisdiction hearing in late March, the court appointed counsel for Father and continued the matter to allow him to decide whether to request a DNA test to establish him as the biological father of Z.B. At the continued hearing in April, Father confirmed he wanted DNA testing, which the court ordered and then set a date for a contested jurisdiction and disposition hearing on the petition.

In an addendum report, the Agency explained that according to Mother, Father was an alcoholic who had completed a substance abuse program and was now sober. Father reported that he lived alone in a four-bedroom house and worked from home. He had a 12-year-old daughter from a prior relationship whom he had not seen in four years and a six-year-old daughter whom he visited overnight and on holidays. Father maintained that he had been sober since his relapse in November 2020.[2] He said that if he were found to be Z.B.'s biological father and Mother did not reunify with

---

[2] Father stated that he had been sober for three years prior to his November 2020 relapse.

4

him, he would seek placement of Z.B. with him.  Father later told the Agency that he wanted a relationship with Z.B. and had decided to request custody of him.  The Agency reported that Z.B.'s NREFM caregivers were overwhelmed with caring for three young children and could not care for all of them for an extended period of time.

At a May pretrial status hearing, the court received the results of DNA testing that showed Father to be Z.B.'s biological father and it designated Father as such.  Father's counsel informed the court that Father was seeking custody of Z.B.

At the June contested jurisdiction and disposition hearing, the court found the petition's allegations true by clear and convincing evidence.  After considering further evidence and hearing arguments of counsel, the court denied Father's request for elevated parental status under *Adoption of Kelsey S.* (1992) 1 Cal.4th 816.  On the second day of the hearing, the court removed Z.B. from Mother's custody, found it would be detrimental to Z.B. to place him with A.B., and found that it would not be in Z.B.'s best interests to be placed with Father.  It ordered unsupervised visits for all three parents and that Father's Iowa home be evaluated pursuant to the Interstate Compact on the Placement of Children (ICPC).  The court also set aside the paternity declaration signed by Mother and A.B. under Family Code section 7577, but nevertheless designated A.B. as Z.B.'s presumed father under Family Code section 7611, subdivision (d).

In August, the Agency filed a section 388 petition, seeking to limit A.B.'s contact with Z.B. and his siblings to supervised visits.  The petition alleged that A.B. was having a mental health crisis, reported feeling

overwhelmed, and could not handle visiting all three children at once. The court granted the petition.

Also in August, Father filed his own section 388 petition, seeking placement of Z.B. with him. The court summarily denied the petition, finding that Father had not alleged sufficient changed circumstances to warrant an evidentiary hearing.

4. *The current section 388 petition*

In September, Father filed a second section 388 petition, again seeking placement of Z.B. with him. The petition alleged as changed circumstances the facts that he had visited Z.B. twice in San Diego and his Iowa home had been approved under the ICPC.

At a September hearing, A.B. requested that the court find his presumed father status under Family Code section 7611, subdivision (d) had been rebutted by the court's finding that Father was Z.B.'s biological father. On that basis, he asked the court to strike him from Z.B.'s petition. The court granted A.B.'s request. It then addressed Father's section 388 petition, found that he had made a prima facie showing, and granted him an evidentiary hearing on his petition. Pending that hearing, the court authorized Z.B. to visit with Father in Iowa.[3]

---

3    At that hearing, the court also summarily denied Mother's section 388 petitions seeking placement of all three children with her. At the subsequent October contested hearing, the court reconsidered its earlier ruling, found Mother had made a prima facie showing on her section 388 petitions, and stated it would consider her petitions at that hearing along with Father's section 388 petition. Then, following the contested hearing, the court denied Mother's petitions. Because the order denying her section 388 petitions is not the subject of this appeal, we need not and do not further discuss that ruling.

In its October addendum report, the Agency recommended that the court deny Father's section 388 petition and that Z.B. continue in his current placement. It indicated that in mid-September, Father had visited Z.B. in San Diego and two days later returned to Iowa with Z.B. for a two-week visit there. Father reported that Z.B. was able to visit with family in Iowa and his visit there was going well.

Nonetheless, the Agency did not believe it was in Z.B.'s best interests to be separated from Mother and his siblings at that time. Because Father had not had the opportunity to be a full-time parent to Z.B., the Agency wanted to first encourage more visitation by him in both Iowa and San Diego. The Agency also noted that Mother had made progress in her services and visitation, although she was still early in her recovery from alcohol abuse with less than one year of sobriety. The Agency report concluded: "Reunification with [Mother] is impending and placement outside of the state at this point in time would be disruptive. [Father] has been making positive steps to engage with [Z.B.] and be a part of his life. The Agency is supportive of [Z.B.] continuing to have unsupervised, [overnight visits] with [Father] and encourages their relationship. During this process, it would be beneficial to demonstrate for [Z.B.] an effective co-parenting relationship."

5. *October 2021 hearing and order*

At the October contested hearing on Father's section 388 petition, the court first found Father to be Z.B.'s presumed father pursuant to Family Code section 7611, subdivision (d). It received into evidence the Agency's reports, Father's family photographs, and Mother's exhibits. The court also

heard testimony from Father, Mother, and an Agency social worker. After hearing argument from counsel, the court denied Father's petition.

DISCUSSION

1. *Presumption in Favor of Child's Placement with Noncustodial Parent*

After a juvenile court exercises jurisdiction over a child pursuant to section 300, it must determine the appropriate disposition for that child. (§§ 360, subd. (d), 361, 362; *In re N.M.* (2011) 197 Cal.App.4th 159, 169.) If at the dispositional hearing the court removes the child from the care of the custodial parent pursuant to section 361, section 361.2 requires the court to place the child with the noncustodial parent, unless such placement would be detrimental to the child.[4] (§ 361.2, subd. (a); *In re Zacharia D.* (1993) 6 Cal.4th 435, 453 (*Zacharia D.*).)

By its terms, section 361.2 generally applies only at a dispositional hearing after a child has been removed from the care of the custodial parent. (*Zacharia D.*, *supra*, 6 Cal.4th at p. 453.) To qualify as a noncustodial parent, an alleged or biological father must also obtain status as a presumed father. (*Id.*, at p. 454; *Liam L.*, *supra*, 240 Cal.App.4th at p. 1080, fn. 5.) "To comport with due process, the detriment finding [under section 361.2, subdivision (a)] must be made under the clear and convincing evidence standard." (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1401.)

---

4      Section 361.2, subdivision (a) provides: "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

Where, as here, a noncustodial parent "requests placement or custody for the first time *after* disposition," this court's decision in *Liam L.* explains that the noncustodial parent "must file a modification petition under section 388 to make such a request." (*Liam L.*, *supra*, 240 Cal.App.4th at p. 1073.) A noncustodial parent "has both statutory and constitutional rights to the care and custody of his or her own child." (*Id.* at p. 1080, fn. omitted.) Specifically, "[a] noncustodial parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be detrimental to the safety, protection, or physical or emotional well-being of the child." (*In re A.A.* (2012) 203 Cal.App.4th 597, 605.) After a disposition hearing and order, a noncustodial parent may request a change in the child's placement by means of a section 388 petition to modify the disposition order. (*Liam L.*, at pp. 1083-1084.) For example, if a noncustodial parent had only recently participated in the dependency proceedings and developed a relationship with the child, he or she may allege a change in circumstances or new facts in support of a section 388 petition to obtain placement of the child. (*Id.* at p. 1084.)

In general, a section 388 petition to modify a prior juvenile court order requires the petitioner to show, by a preponderance of the evidence, both: (1) a change in circumstances or new evidence; and (2) that the requested order is in the child's best interests. (§ 388, subd. (a)(1); *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) However, as we held in *Liam L.*, the general test for a section 388 petition does *not* apply to a noncustodial parent's postdisposition section 388 petition seeking placement of the child. (*Liam L.*, *supra*, 240 Cal.App.4th at pp. 1073-1074, 1085-1086.) We explained that "given the underlying presumption in

California's dependency scheme that a minor should be placed with a noncustodial parent, absent a finding of detriment, such a placement is inherently in the minor's best interests." (*Id.* at p. 1073, fn. omitted.) Therefore, "[a] noncustodial parent . . . makes a prima facie case of best interests[] under section 388 when the noncustodial parent requests custody of the dependent child postdisposition. This minimal burden reflects the noncustodial parent's constitutional right to care and custody of the child and the law's presumption that the child should be placed with his or her parents whenever possible. A court considering the noncustodial parent's [section 388] petition must place the child with the noncustodial parent unless the opposing party establishes that the placement would be detrimental to the child's safety, protection, or physical or emotional well-being." (*Id.* at pp. 1085-1086.)

2. *The Juvenile Court Abused Its Discretion by Applying the Wrong Legal Standard*

Father contends the juvenile court abused its discretion by employing the wrong legal standard in denying his section 388 petition. Specifically, he argues the court incorrectly applied the general "best interests" section 388 standard rather than the proper "detriment" test as articulated in *Liam L.* The Agency appears to concede that the court applied the incorrect standard in denying Father's section 388 petition, but contends he invited the error or forfeited his claim on appeal.

a. *The proceedings on Father's section 388 petition*

In his section 388 petition, Father sought placement of Z.B. with him, alleging circumstances had changed since the court's June 2021 dispositional order because he had visited Z.B. twice in San Diego and his Iowa home had been approved under the ICPC for placement of Z.B. Father requested a new

10

order placing Z.B. with him in Iowa and then either termination of dependency jurisdiction or provision of family maintenance services. He argued that such placement would be in Z.B.'s best interests because his son was in need of stability and one-on-one attention, both of which Father could provide. He also expressed concern that Z.B.'s behaviors would continue to destabilize in his current placement, which would be detrimental to his long-term physical and mental health.

At the October 2021 hearing, the court initially considered whether Father should be elevated to status as a presumed father. It found Father to be Z.B.'s presumed father pursuant to Family Code section 7611, subdivision (d). In so doing, the court stated: "[T]he commitment is there. [Father] has assumed parental responsibilities and displayed a commitment and is certainly providing emotional support [to Z.B.]."[5]

The court then conducted the contested hearing on Father's section 388 petition. With regard to the ICPC report, the Agency social worker clarified that the purpose of the ICPC report was not to make a formal placement recommendation. Nonetheless, the social worker who prepared the report recommended that Z.B. be placed with his Father, specifically concluding there were no safety concerns and that Father and his home were safe for Z.B.

Nevertheless, focusing on Z.B.'s best interests, the Agency reached a different conclusion, suggesting that Z.B. remain in his current placement with the NREFMs. This was a "very difficult" recommendation for the social worker to make. She acknowledged that "[p]lacement [of a child] with a safe

---

[5] At the time, the Agency's counsel incorrectly argued: "[W]e are operating under [section] 388 and the best interest standard I think still governs even if [Father] is elevated to a presumed father."

parent is always ideal," as opposed to placement of the child with a NREFM. The social worker also recognized that Father had "put forth a lot of effort in trying to get to know [Z.B.]" in the short amount of time since he had visits and "has made an effort to be part of his life." She testified that in June 2021, Z.B. was placed (apparently together with his siblings) with another NREFM, his former babysitter.

In his testimony, Father described, among other things, his visits with Z.B. in San Diego in July and August 2021, as well as Z.B.'s subsequent two-week visit with him in Iowa where he met his paternal relatives. In her testimony, Mother described her alcohol recovery efforts, which included a month-long stay at an inpatient alcohol program and subsequent completion of an outpatient program.

Father's counsel argued in closing that Father was a nonoffending, noncustodial parent who came forward at the time of the detention hearing and then established himself as Z.B.'s biological father. He noted that the ICPC report recommended that Z.B. be placed with Father. He also observed that Father had taken Z.B. into his home and that Z.B. was comfortable there. He asked the court to find there had been a change in circumstances, including the ICPC approval of his home and Z.B.'s physical and emotional stabilization there, which "also bleeds into what is the best interest for [Z.B.]." Z.B.'s counsel endorsed Father's request, contending that "it's in [Z.B.'s] best interest for [him] to be placed with [Father] in Iowa."

In contrast, both Mother and the Agency asserted that the court should deny Father's section 388 petition. Mother's counsel maintained that because Z.B. and Mother have a support system in California, "[t]here is no best interest to move [him] out of the state." Counsel for the Agency also asserted

that the court should find "placement [of Z.B.] with [Father] would not be in [his] best interest." She conceded the Agency did not have any safety concerns regarding Father. But she nonetheless argued: "This is a [section] 388 [petition]. The legal standard is what the court finds is in this child's best interest."

Counsel for the Agency went on to describe many of the factors it "took into account in making a recommendation as to what it believed was in [Z.B.'s] best interest." She noted that because Father was not a legally presumed parent at the time of the disposition hearing, the court was not then statutorily required to determine whether he was a noncustodial parent with whom Z.B. could be placed unless such placement would be detrimental to Z.B. She argued the Agency believed that Mother was making progress and her reunification with Z.B. was imminent.

The Agency's counsel summarized: "[I]n that vein, [the Agency] thinks that [it] is in the best interest of the child [in] having [him] remain here to have a chance to reunify with the previously custodial parent [i.e., Mother] and to reunify together with the siblings with whom the child has spent his whole life living." She represented that while the social worker may have preferred not to recommend a placement, the Agency had been forced to choose between the parents and did its best to make a fair assessment and provide the court with a recommendation. She concluded by asserting the court should deny Father's section 388 petition and, in particular, find that it was "in [Z.B.'s] best interest to remain here." Mother's counsel endorsed the Agency's position, maintaining that because Z.B. and Mother have a support system in California, "[t]here is no best interest to move [him] out of the state."

13

In rebuttal, Father's counsel suggested that "[what] has to be done here is what's best for [Z.B.]." And while he "would never tell the court [it had] to do something," he argued the court should "find that [Z.B.'s] best interests are met by going with Father."

At the conclusion of closing arguments, the court began its ruling by summarizing its understanding of the issues: "Changed circumstances, best interest." It stated: "What the court needs to look at is the nature of the change [in circumstances] and how that change came about and how it affects the request for the modification of these orders and then what's in the best interest of [Z.B.] . . . ." The court noted that the evidence showed Father had a "nice four bedroom house on a beautiful plot of land with green grass and plenty of room." It referred to the ICPC report as saying that Father is "gainfully employed and financially secure and stable in all respects," and it read the report as "recommend[ing] placement [of Z.B. with Father]." The court further noted that Father has "plenty of supportive, wonderful loving family" and that Z.B. "has had a great time over the last couple of weeks" in Iowa.

After finding that Father had made the threshold showing of changed circumstances, the court addressed "that prong of what's in the best interest [of Z.B.] and I have to look at the needs of [Z.B.]. I have to look at the circumstances of the present dynamic as it exists today . . . ." In so doing, the court noted that Z.B. had two siblings in San Diego with whom he lived and had been having overnight visits with Mother that may lead to reunification with her, but added "we don't know yet." As to Father, the court expressed the view that he is "going to be a wonderful father [and it had] elevated him to presumed status because he's committed, he's all in." It nonetheless denied Father's section 388 petition, stating: "[T]his court finds that it would

14

be in [Z.B.'s] best interest to keep him in his present placement and allow the reunification process to go forward with Mother and allow Father to continue to build that relationship even though it's out of state. [¶] But I am not convinced that it is in the best interest to have him move permanently or be placed with Father at this time."

b. *Father did not invite the error or forfeit the argument*

In its respondent's brief, the Agency concedes the juvenile court applied an incorrect legal standard in denying Father's section 388 petition, but contends that Father cannot raise that claim on appeal because he either invited the error or forfeited the argument. In particular, citing cases discussing the general doctrine of invited error (see, e.g., *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677 (*Mesecher*); *In re G.P.* (2014) 227 Cal.App.4th 1180), the Agency asserts that Father invited the error because he misled the court and caused it to apply an incorrect legal standard by arguing at the hearing that the placement order requested by his section 388 petition would be in Z.B.'s best interests. In *Mesecher*, we recognized that a party may be estopped from challenging a trial court's error if its own conduct induced the commission of that error. (*Mesecher*, at p. 1685, citing *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166.)

In support of its invited error contention, the Agency suggests that Father had "multiple opportunities" to argue the proper legal standard that applied to his section 388 petition, but failed to do so and never maintained that the court should apply the *Liam L.* standard (i.e., that the court must place Z.B. with him unless it found it detrimental to Z.B. to do so). Although the Agency cites certain pages from the reporter's transcript, it does not quote any specific language or identify any other specific conduct by Father's

15

counsel at the hearing that affirmatively misled the court regarding the proper legal standard to be applied. Furthermore, our independent review of the record, including the closing arguments of Father's counsel regarding Z.B.'s best interests as described above, does not persuade us that Father's conduct urged or induced the court to apply an incorrect legal standard. Father's section 388 petition nowhere invited use of a "best interests" standard. It was the Agency's addendum report dated October 1, 2021 that incorrectly advocated a best interests analysis. By responding to the Agency's position, Father did not invite the court's error.

Alternatively, citing cases discussing the general doctrines of waiver and forfeiture (see, e.g., *In re A.S.* (2018) 28 Cal.App.5th 131; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330), the Agency argues that Father waived or forfeited his claim of error by not objecting below when the court had an opportunity to correct its mistake. And while it is true that, "[a]s a general rule, a new theory may not be presented for the first time on appeal," under a well-established exception such a new argument can be made if "it raises only a question of law and can be decided on undisputed facts." (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 983 (*Piscitelli*).) As the California Supreme Court has summarized, "[A] litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394 (*Hale*).)

Although the record here does not show any objection by Father to the court's application of the general "best interests" standard (instead of the *Liam L.* standard) in denying his section 388 petition, we conclude that Father did not waive or forfeit his claim because that alleged error presents a pure question of law on undisputed facts. (*Piscitelli*, *supra*, 87 Cal.App.4th at p. 983; *Hale*, *supra*, 22 Cal.3d at p. 394.) Alternatively, even if Father were

16

deemed to have forfeited his challenge to the court's error by not raising it below, we would nevertheless exercise our inherent authority to address the error because it involves an important question of law on undisputed facts that affects Father's fundamental interest as a parent. (See, e.g., *In re M.S.* (2019) 41 Cal.App.5th 568, 589 [appellate court has discretion to excuse a parent's forfeiture in cases involving important legal issues, such as a juvenile court's failure to adhere to California's dependency scheme, which failure may adversely affect a parent's fundamental interest in his or her child]; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1501 (*Nickolas T.*) [same]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293-1294 [appellate court did not abuse its discretion by addressing important issue of dependency law despite parent's failure to object below]; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [party's forfeiture by failure to challenge error below does not deprive appellate court of its authority to exercise its discretion to address that question].)

In *In re Jonathan P.* (2014) 226 Cal.App.4th 1240 (*Jonathan P.*), a very similar case involving a noncustodial parent's postdisposition section 388 petition, the appellate court addressed the question of whether the forfeiture doctrine precluded it from addressing a father's contention that the juvenile court incorrectly applied the general "best interests" standard, rather than section 361.2's presumption in favor of placement with a noncustodial parent absent a finding of detriment. (*Jonathan P.*, at p. 1252.) As we do here, the *Jonathan P.* court exercised its discretion to address that question of law. (*Ibid.*; cf. *In re V.F.* (2007) 157 Cal.App.4th 962, 968 [no forfeiture of question of law whether juvenile court at disposition hearing erred by failing to make § 361.2, subd. (a) detriment finding as to noncustodial parent before placing children in foster care].)

In *Nickolas T.*, *supra*, 217 Cal.App.4th 1492, we addressed a similar question as to whether a mother had forfeited her contention that the juvenile court erred by applying the "best interests" standard at the disposition hearing instead of section 361.2's presumption of placement with a noncustodial parent absent a finding of detriment. (*Nickolas T.*, at pp. 1496, 1500-1501.) In that case, both the Agency and the mother had agreed that section 361.2 did not apply and persuaded the juvenile court to apply a different standard and burden of proof (i.e., requiring the mother to show that placement with her would be in her child's best interests). (*Id.* at pp. 1499, 1501.) Even in these circumstances, we exercised our discretion to address this important question of law involving the foundational standard for the court's decision. (*Id.* at p. 1501.)

Accordingly, as in *Jonathan P.*, *supra*, 226 Cal.App.4th 1240 and *Nickolas T.*, *supra*, 217 Cal.App.4th 1492, even if the claim were otherwise forfeited, we would exercise our discretion to address the question of law on undisputed facts whether the juvenile court in this case applied an incorrect "best interests" legal standard in denying Father's postdisposition section 388 petition. None of the cases cited by the Agency involve sufficiently similar circumstances or otherwise persuade us to refrain from exercising our inherent authority to address that question of law.

c. *The trial court erred by applying the wrong legal standard*

Addressing the merits of Father's contention, we conclude that the record clearly shows the juvenile court applied an incorrect legal standard in ruling on his postdisposition section 388 petition. As we have discussed, the court in four instances referred to the "best interests" standard in deciding whether to grant or deny Father's section 388 petition. In particular, the

18

court stated that it "need[ed]to look at . . . what's in the *best interest* of [Z.B.]." (Italics added.)  The court confirmed it was applying that standard when it recognized that the second step of its analysis, after finding changed circumstances, required it to address "that prong of what's in the *best interest* [of Z.B.] and I have to look at the needs of [Z.B.]."  (Italics added.) Ultimately, the court denied Father's section 388 petition, explaining: "[T]his court finds that it would be in [Z.B.'s] *best interest* to keep him in his present placement and allow the reunification process to go forward with Mother and allow Father to continue to build that relationship even though it's out of state.  [¶]  But I am not convinced that it is in the *best interest* to have him move permanently or be placed with Father at this time."  (Italics added.)

Based on our review of the undisputed facts in the record, we conclude the court clearly applied the general "best interests" standard in denying Father's postdisposition section 388 petition as a noncustodial parent seeking placement.  Because the court had already elevated Father from his status as Z.B.'s biological father to Z.B.'s presumed father pursuant to Family Code section 7611, subdivision (d), it was required to apply the "detriment" test set forth in *Liam L.*, *supra*, 240 Cal.App.4th 1068, rather than the "best interests" standard.  In failing to do so, the court abused its discretion. (*Liam L.*, at pp. 1073-1074, 1085-1086; see generally, e.g., *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393-394 [failure to apply the correct legal standard or otherwise adhere to applicable legal principles constitutes an abuse of discretion].)

    d.  *The error was prejudicial*

Based on our review of the record, we further conclude that the juvenile court's error in applying an incorrect legal standard was prejudicial, requiring reversal and remand for a new evidentiary hearing. A judgment or order is generally not reversible unless the trial court's error under state law "resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) The phrase "miscarriage of justice" has been interpreted as requiring reversal of a judgment or order only if it is reasonably probable that a result more favorable to the appellant would have been reached absent the error. (Code Civ. Proc., § 475; *People v. Watson* (1956) 46 Cal.2d 818, 836.) In this context, the California Supreme Court has interpreted the term "reasonable probability" as "merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715; see also, *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 50; *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 682; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Significantly, the Agency does not attempt to argue that the court's error in applying the incorrect legal standard was not prejudicial. Indeed, the record shows that since the beginning of Z.B.'s dependency proceedings, Father had shown a genuine interest in him. He traveled twice to San Diego to visit with Z.B., and Z.B. had traveled to Iowa for a two-week visit with Father. By all accounts, those visits went well and Father exercised an appropriate parental role. Furthermore, the ICPC report concluded that there were no safety concerns regarding Father and recommended that Z.B. be placed with him. Father owned a four-bedroom home, was gainfully employed, and had the support of his family and friends. Although Father had a relapse in his alcohol recovery, he immediately sought help and, at the time of the October 2021 hearing, had been sober for almost one year. Given

the overwhelmingly positive evidence regarding Father's capacity and willingness to care for Z.B., we conclude that had the juvenile court applied the correct legal standard, there is a reasonable likelihood it would have granted Father's section 388 petition.

Because it applied an incorrect standard in ruling on Father's section 388 petition, the juvenile court never decided whether the Agency and/or Mother had carried their burden to show, by clear and convincing evidence, that placement of Z.B. with Father would be detrimental to Z.B. within the meaning of section 361.2, subdivision (a) and *Liam L.*, *supra*, 240 Cal.App.4th 1068. Expressing no opinion on the sufficiency of the existing record to support such a finding, we must reverse the order denying Father's section 388 petition and remand the matter for the court to conduct a new evidentiary hearing on his petition, applying the correct legal standard in light of Z.B.'s then-current circumstances. (See, e.g., *In re Andrew S.* (2016) 2 Cal.App.5th 536, 548.)

## DISPOSITION

The order is reversed and the matter is remanded with directions that the juvenile court conduct a new evidentiary hearing on the section 388 petition, consistent with the views expressed in this opinion and in consideration of Z.B.'s then-current circumstances.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.