Filed 7/9/24  Reina M. v. Superior Court CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| REINA M.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al.,<br><br>    Real Parties in Interest. | No. B334872<br><br>(Super. Ct. No. 22CCJP02219A) |

ORIGINAL PROCEEDINGS in mandate.  Cathy J. Ostiller, Judge.  Petition dismissed in part and denied in part.

Law Office of Martin Lee, Nicole J. Johnson and Benjamin Jude Truax for Petitioner.

No appearance by Respondent.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Real Party in Interest.

Children's Law Center, Taylor Lindsley and Debbie Kol for Minor.

_____

## INTRODUCTION

Reina M., mother of 17-year-old Bryan R., seeks extraordinary writ relief (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 8.452) from the juvenile court's orders at the permanency review hearing denying her request to return Bryan to her custody, terminating her reunification services, and setting a permanency planning hearing under section 366.26. Reina argues substantial evidence did not support the juvenile court's finding that returning Bryan to her would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being. She asks us to direct the juvenile court to vacate its orders and enter new orders returning Bryan to her and setting a review hearing under section 364. We dismiss the petition as moot in part and deny the petition in part.

_____

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Juvenile Court Sustains a Previous Petition, Removes Bryan and His Siblings From Reina, Returns the Children to Reina, and Terminates Jurisdiction*

In 2015 Bryan was nine years old and living with his maternal grandmother. Reina's three other children, Jenyfer, Adrean, and Lizbeth, lived with her. The Los Angeles County Department of Children and Family Services filed a petition alleging that Reina and Juan (Adrean and Lizbeth's father) physically abused the children, that Reina and Juan had a history of domestic violence, that Juan sexually abused Jenyfer, that Juan abused alcohol, and that Reina failed to protect the children. The court sustained the petition and released Bryan to his father. Five months later, the court sustained allegations Bryan's father used methamphetamine, and the Department detained Bryan. In 2017 the court returned Bryan and his siblings to Reina. In 2018 the court terminated jurisdiction and awarded Reina sole physical and legal custody of Bryan and his siblings.

B.     *The Department Files a New Petition Alleging Sexual Abuse, and the Juvenile Court Again Detains the Children from Reina*

In May 2022 a caller reported Reina's live-in boyfriend Eric sexually abused Bryan's half sister Lizbeth. Bryan, Adrean, and Lizbeth lived with their maternal grandmother, but visited Reina frequently. Reina told the social worker she knew about the abuse, but did not report it because she did not want the

3

Department to remove her children again. She said that she had nowhere to go, but that she would leave Eric, even if it meant she would be homeless. The maternal grandmother said the children did not like living with Reina and Eric. She said Bryan visited Reina, but would not spend the night. Bryan told the social worker that he got "stressed out from [his] brother and sister" and that Eric treated his mother "like a servant." Bryan said he felt Eric was "going to hurt" Reina. Bryan said he lived with his grandmother "because my mom is with her boyfriend. I just don't like him and he is not a good person." The court detained the children and placed them with the maternal grandparents.

In June 2022 the Department filed a petition alleging that Eric sexually abused Lizbeth and that Reina knew about the abuse but did not protect Bryan, Adrean, and Lizbeth. At the detention hearing the juvenile court found the Department had made a prima facie showing the children were persons described by section 300 and ordered their continued detention. The court ordered monitored visitation for Reina.

C. *The Juvenile Court Sustains the Petition and Removes the Children*

At a combined jurisdiction and disposition hearing in August 2022, the juvenile court sustained the allegations in the petition and found Bryan, Adrean, and Lizbeth were persons described by section 300, subdivisions (b), (d), and (j). The court declared the children dependent children of the juvenile court and removed them from Reina. The court ordered sexual abuse awareness counseling, parenting classes, individual counseling, and monitored visitation for Reina. The court also ordered conjoint counseling if recommended by the children's therapists.

4

D.      *At the Six-month Review Hearing, the Juvenile Court Continues Reina's Reunification Services*

For the six-month hearing in February 2023, the Department reported the children were living with the maternal grandparents, whom they interchangeably called "mom" and "dad" or "grandma" and "grandpa." Bryan had expressed suicidal ideations "on a few occasions." His therapist reported that Bryan wanted to hurt himself "as a reaction to being overstimulated and/or stressed out," but that Bryan was unlikely to harm himself. Bryan said therapy helped him deal with feeling "overwhelmed by things that stress him out, such as his siblings fighting." While at their grandparents' home, Bryan and his half sister Lizbeth had performed sexual acts with each other. The Department and the grandparents implemented a safety plan to address this issue.

The court found by clear and convincing evidence that returning Bryan to Reina would create a substantial risk of detriment to him. The court found Reina had made substantial progress in her case plan and continued her reunification services. The court continued Bryan's placement with his grandparents and designated the grandparents as co-holders with Reina of his educational and developmental rights.

E.      *The Court Orders Reina's Visits To Be Monitored*

In April 2023 the Department filed a petition under section 388 to require Reina's visits to be monitored. The Department reported Reina had allowed Juan, who had sexually abused Bryan's older sister Jenyfer, to participate in an unmonitored visit because Adrean said he missed his father and

5

wanted to see him.  Juan appeared "visibly hungover," and his car "smelled like a bar."  As they drove to a restaurant with Bryan and the other children, Reina and Juan argued, and Reina, Adrean, and Lizbeth cried.  When the social worker asked Bryan what Reina and Juan argued about, he said that "'my mom told me it's adult stuff and that she trusts me so that's why she told me, but I can't tell you'" and that, "'If I tell you bad stuff will happen.'"  The court granted the petition and ruled that Reina's visits were to be monitored and that Reina was not to monitor Juan's visits.

> F.     *At the 12-month Review Hearing, the Juvenile Court Continues Reina's Reunification Services*

At the 12-month hearing in August 2023, the Department reported Bryan was receiving behavioral support services for his "excessive fighting with his siblings" and was receiving treatment for "major depressive disorder with psychotic symptoms."  Bryan did not report any suicidal ideation during the review period.  He "affectionately" referred to his grandparents as "'mom' and 'dad'" and said he wanted to continue living with them.  The court found by clear and convincing evidence that returning Bryan to Reina would create a substantial risk of detriment to him.  The court also found Reina had made substantial progress in her case plan and continued her reunification services.

> G.     *The Court Returns Adrean and Lizbeth, but Terminates Reina's Reunification Services for Bryan*

At the 18-month permanency review hearing in February 2024, the Department reported Reina had made significant progress in her case plan, completing parenting

6

classes and sex abuse awareness counseling and continuing individual counseling. She had overnight visits with Adrean and Lizbeth, who felt "safe and happy" in Reina's care. Reina had weekly unmonitored visits with Bryan, but he refused overnight visits, saying he felt "comfortable at home." Although Bryan sometimes appeared "interested in reunifying" with Reina, "more times than not" he said he wanted to continue living with his grandparents, even if his siblings reunified with Reina. During the review period, Bryan was "adamant" he did not want to reunify with Reina. Regarding Bryan's mental health, the Department reported he had "an increase in auditory hallucinations and self-harm ideations when experiencing a stressful situation." On two occasions Reina and the grandparents took Bryan to a psychiatric hospital to be evaluated for suicidal thoughts.

The Department recommended the court return Adrean and Lizbeth to Reina. The Department recommended the court terminate Reina's reunification services for Bryan and set a hearing under section 366.26 to select a permanent plan.

At the hearing counsel for Bryan acknowledged Reina's progress, but stated Bryan wanted to remain with his grandparents. Counsel for Reina argued the court should return Bryan to Reina or, in the alternative, continue the hearing and provide Reina additional reunification services. The court returned Adrean and Lizbeth to Reina's custody. Regarding Bryan, the court stated: "It's appropriate and in [Bryan's] best interest to allow him to pursue legal guardianship with the grandparents and then potentially nonminor dependent status when he turns 18." The court ruled that, although Reina substantially complied with her case plan, it was "in the best

7

interest of this child to not be returned to the home of the mother at this time." The court found returning Bryan to Reina would create a substantial risk of detriment to him. The court terminated reunification services for Reina and set a permanency planning hearing under section 366.26 for May 30, 2024.

H.  *Reina Files a Petition for Extraordinary Writ, and This Court Issues an Order To Show Cause*

Reina filed a petition asking this court to direct the juvenile court to return Bryan to Reina and to vacate its orders terminating family reunification services and setting a permanency planning hearing. We issued an order to show cause. (See Cal. Rules of Court, rule 8.452(h)(1) ["Absent exceptional circumstances, the reviewing court must decide the petition on the merits by written opinion."].)[2]

I.  *The Juvenile Court Selects a Planned Permanent Living Arrangement as the Permanent Plan*

At the permanency planning hearing on May 30, 2024, the Department recommended the court take the hearing off calendar because Bryan would turn 18 years old and become a nonminor dependent six months later, in November 2024. The court took the hearing off calendar and selected a planned permanent living arrangement as the permanent plan for Bryan.[3]

---

[2]  Because Reina did not make "an exceptional showing of good cause," we denied her request for a stay of the hearing. (Cal. Rules of Court, rule 8.452(f).)

[3]  In light of the juvenile court's May 30, 2024 order, of which we take judicial notice (see Evid. Code, §§ 452, subd. (d), 459),

## DISCUSSION

A. *Substantial Evidence Supported the Juvenile Court's Finding That Returning Bryan to Reina Would Be Detrimental to His Emotional Well-being*

At the 18-month permanency review hearing, the juvenile court must return the child to the parent's custody unless the court finds, by a preponderance of the evidence, returning the child "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a)(1); see *Michael G. v. Superior Court* (2021) 69 Cal.App.5th 1133, 1141.) "We review the juvenile court's finding of detriment for substantial evidence." (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864; see *M.G. v. Superior Court* (2020) 46 Cal.App.5th 646, 660.) "Under that standard we inquire whether the evidence, contradicted or uncontradicted, supports the court's determination. We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not substitute our deductions for those of the juvenile court." (*Georgeanne G.*, at p. 865; see *In re I.J.* (2013) 56 Cal.4th 766, 773.)

---

Reina's request that we direct the juvenile court to vacate its order setting a permanency planning hearing under section 366.26 is moot. (See *In re D.P.* (2023) 14 Cal.5th 266, 276 ["A case becomes moot when events '"render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief."'"].) The remainder of her petition, however, is not moot.

Substantial evidence supported the juvenile court's finding that returning Bryan to Reina's custody would be detrimental to his emotional well-being. Bryan repeatedly stated he wanted to continue living with his grandparents, not with Reina. Bryan had lived with his grandparents most of his life and was living with them when the Department filed the petition in 2022. Bryan called his grandparents "mom" and "dad" and felt safe and comfortable in their care. Although Bryan was willing to spend one-on-one time with Reina, he avoided participating in "family time" with his mother and siblings. When Reina arrived for visits at the grandparents' home, Bryan would greet her and then retreat to his room. When Adrean and Lizbeth stayed overnight with Reina, Bryan refused to attend, saying, "I only want to sleep at my house" (i.e., his grandparents' house).

Bryan stated spending time with his mother and siblings made him "stressed out" because his siblings often fought. And when Bryan experienced a stressful situation, he sometimes thought about suicide and heard voices telling him to hurt himself. Reina said Bryan worried the police would come when his siblings fought.

Reina argues that, although Bryan complained about his siblings fighting, he never "articulated that he felt unsafe or neglected by [Reina] during his visits with her." She also argues she was committed to Bryan's "educational, mental, and emotional needs." The relevant question under section 366.22, subdivision (a)(1), however, was whether returning Bryan to Reina's custody would create a substantial risk of detriment to his emotional well-being, not whether Reina was a good parent or whether she caused the detriment. (See *In re A.C.* (2020) 54 Cal.App.5th 38, 46 ["A court properly may decline placement

with a safe and nonoffending parent if that placement would be detrimental to the child's emotional well-being."]; *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425 ["the detriment need not be related to parental action"].)

Reina also argues evidence Bryan became "stressed out" when his siblings fought did not establish a substantial risk of detriment. She contends there was no evidence the fighting between Adrean and Lizbeth was anything more than typical "squabbles" between siblings. But even if the fighting was typical sibling behavior a typical child would have been able to cope with, there was evidence the fighting exacerbated Bryan's serious mental health issues. Bryan was diagnosed with major depressive disorder. He felt stress when his siblings fought and, when he was under stress, he sometimes had suicidal ideations. During the six-month review period before the permanency review hearing, Bryan experienced increased auditory hallucinations and self-harm ideations during stressful situations. His family contacted crisis intervention services several times, and twice he was evaluated at a psychiatric hospital. Given Bryan's mental health struggles, it was appropriate for the court to consider how exposure to his siblings' fighting affected his emotional well-being. (See *In re Luke M.*, *supra*, 107 Cal.App.4th at p. 1425 ["emotional harm is relevant to a detriment analysis"]; *In re Joseph B.* (1996) 42 Cal.App.4th 890, 899 [section 366.22 focuses "on the child's well-being at the time of the review hearing"].)

Reina also argues the juvenile court misconstrued Bryan's lack of "enthusiasm" for visiting Reina. She points to statements by Bryan's grandmother and his care coordinator that he sometimes did not want to participate in visits that involved

11

activities he did not like. Reina's argument ignores the evidence Bryan did not want to live with Reina: He refused to participate in overnight visits at Reina's home, was uncomfortable spending time with Reina together with his siblings, and said unequivocally he wanted to continue living with his grandparents. Bryan was 17 years old, had lived with his grandparents since he was a toddler, and was strongly bonded with them. The juvenile court did not err in considering his wishes not to return to his mother's custody. (See *In re Adam H.* (2019) 43 Cal.App.5th 27, 33 [although "'a child's preference is not the deciding factor in a placement decision,'" a "teenager is entitled to have his wishes considered"]; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1507 [juvenile court properly considered a teenager's "reluctance to live with his mother"]; *Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 704-705 ["At the section 366.22 hearing, a trial judge can consider, among other things: whether changing custody will be detrimental because severing a positive loving relationship with the foster family will cause serious, long-term emotional harm."].)

Finally, Reina argues the juvenile court should have returned Bryan to her custody and ordered family maintenance services. She contends she and her children "are exactly the type of family that is envisioned by the Legislature for the provision of family maintenance services." Her argument asks us to reweigh the evidence and come to a different conclusion than the juvenile court about whether to return Bryan to Reina's custody. Our role is to decide whether substantial evidence supported the juvenile court's decision, not to reweigh the evidence. (See *In re Caden C.* (2021) 11 Cal.5th 614, 640 ["In reviewing factual determinations

12

for substantial evidence, a reviewing court should 'not reweigh the evidence.'"].)

### B. *The Juvenile Court Did Not Err in Terminating Reunification Services*

Reina argues the juvenile court erred when it terminated reunification services at the 18-month permanency review hearing. The court did not err. Once the juvenile court found it would be detrimental to return Bryan to Reina—as discussed, a finding supported by substantial evidence—section 366.22 required the court to terminate reunification services.

"The Legislature has determined the juvenile court may generally offer family reunification services for a maximum period of 18 months." (*Georgeanne G. v. Superior Court*, *supra*, 53 Cal.App.5th at p. 864; see *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) "If the child is not returned to a parent at the permanency review hearing, the court must terminate reunification services and order a hearing pursuant to section 366.26." (*Georgeanne G.*, at p. 864; accord, *Michael G. v. Superior Court*, *supra*, 69 Cal.App.5th at p. 1141; see § 366.22, subd. (a)(3) [the "court shall also order termination of reunification services to the parent"].)[4] Because substantial evidence supported the juvenile court's finding that returning Bryan to Reina's custody would be detrimental to his emotional

---

[4] Under section 366.22, subdivision (b), the juvenile court may order additional reunification services "under certain exceptional circumstances." (*Michael G. v. Superior Court*, *supra*, 69 Cal.App.5th at p. 1141.) Reina does not argue any of those exceptional circumstances is present here.

well-being, the juvenile court did not err in terminating reunification services.

## DISPOSITION

The petition seeking a writ of mandate directing the juvenile court to vacate its order setting a permanency planning hearing under section 366.26 is dismissed as moot. The petition is otherwise denied.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.

14