Filed 4/22/25  In re M.T. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.T., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEFFERY T.,<br><br>Defendant and Appellant. | F088853<br><br>(Super. Ct. No. 24CEJ300159-1)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Amythest Freeman, Judge.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Smith, Acting P. J., Snauffer, J., and DeSantos, J.

Jeffery T. (father) appeals from the juvenile court's dispositional order granting custody of his daughter, M.T., to respondent Fresno County Department of Social Services (the Department). The court removed M.T. from her biological mother, J.C. (mother), because mother's mental illness and drug addiction created a substantial risk of physical harm to M.T. Because father was a noncustodial parent, the juvenile court was required to adjudicate his request for physical custody of the child under Welfare and Institutions Code section 361.2.[1] Under the statute, father was entitled to custody of M.T. unless the juvenile court found that placement with father would be detrimental to M.T.'s safety, protection, or physical or emotional well-being. (§ 361.2, subd. (a).) The juvenile court found it would be detrimental to place M.T. with father, but the court did not expressly state the reasons for this decision as the statute requires. (§ 361.2, subd. (c).)

On appeal, father contends the juvenile court committed reversible error by failing to state the basis for its detriment finding. He also argues the detriment finding is not supported by substantial evidence. His first claim is meritorious, and we accordingly reverse the order on that ground and remand the case for further proceedings consistent with this opinion. We need not address the substantial evidence claim.

## BACKGROUND

### I.    Initial incident and investigation

On September 20, 2024,[2] Fresno police officers responded to a general neglect referral made to the Department concerning then four-month-old M.T. Officers learned mother had tried leaving M.T. with an unknown male and called an ambulance for herself. When paramedics arrived, they could not understand what mother was saying. Mother had previously been held under section 5150.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Further references to dates are to the year 2024.

Maternal grandmother was at the scene and told police and social workers that she had recently been unsuccessful in securing a guardianship for M.T. Maternal grandmother told a social worker that mother had been diagnosed with postpartum depression and used marijuana, alcohol, and maybe methamphetamine. M.T. was taken and placed in a foster home.

A social worker contacted mother at the psychiatric hospital on September 23. Mother stated at first that she was against maternal grandmother securing a guardianship, claiming maternal grandmother used methamphetamine. When the social worker asked why mother thought this, mother did not reply. Mother later said that her first choice for a guardianship would be maternal grandmother.

The social worker contacted father on September 23 at the Fresno County jail, where he was incarcerated. He was in custody for a probation violation in a 2022 domestic violence case involving violence against his ex-wife, who is not mother. The social worker introduced herself and explained the purpose of the visit. Father shook his head and put his head in his hands, appearing upset. He said mother was not of sound mind and he thought M.T. was supposed to be with maternal grandmother. He was unsure why maternal grandmother had not yet secured a guardianship. He said that he likely was getting out of jail that day and that he probably was going to a rehabilitation facility for about a month before going home. He stated that he loved M.T. and would do anything for her. He would eventually like M.T. in his care but was happy to have her with maternal grandmother or paternal grandparents while he "gets back on track." He was "very involved" with M.T. before he went to jail and he has a very good relationship with maternal grandparents. He said maternal grandmother is a great person and takes very good care of M.T.

Father denied domestic violence between mother and him. He said he previously had a drinking problem but had been sober for two years from alcohol, and also said he

3.

previously was addicted to cocaine from 2010 to 2018.  He said he would benefit from a treatment program.  He denied mental health concerns.

Father said he has custody of a 10-year-old son with another woman.  The paternal step-grandmother and paternal grandfather are caring for the boy while father is in jail.  Father stated he had his son when he was very young and paternal grandparents have been "supports" and have helped raise his son.  He loves his son and has a good relationship with him.  He said that if maternal grandmother for any reason could not take M.T., the paternal grandparents were also a "good option."  The social worker said that "can be assessed."

The social worker said father seemed like a "good option in the future if he felt he would like to file for custody of [M.T.]."  Father said having help would be great and asked if that meant M.T. had to stay in out-of-home care.  The social worker said that was likely the case for now, but said father was a nonoffending parent.  The social worker added that if father began services and showed progress, the juvenile court may later consider placing M.T. in his care.  Father said he was " 'team [M.T.]' " and would do whatever is in her best interest, and added that he would like to do a program for about a month.

After the visit with father, on September 23, the social worker called paternal step-grandmother, who explained that she helped raise father's son and "loves [M.T.]."  Her relationship with maternal grandmother is "very good" and they both would be "very supportive toward [M.T.]."

## II.   Section 300 petition and detention hearing

On September 24, the Department filed a petition requesting the juvenile court take jurisdiction over then four-month-old M.T. under section 300, subdivision (b)(1).  The sole count in the petition concerned mother's alleged acts or omissions.  The count alleged that mother has a drug problem and unstable mental health that affects her ability to provide adequate care, supervision, and protection for M.T.  It also alleged mother had

been held under section 5150 multiple times and had unstable housing. It was further alleged that mother advised she was having trouble stabilizing her mental health and was unable to obtain her medication. M.T. was alleged to be at substantial risk of serious physical harm or illness if left in mother's care.

The detention hearing was held on September 25. The Department recommended that M.T. be detained from mother and that the Department assume temporary care. Father's counsel said father was "requesting placement and is not opposed with the current care provider." Counsel also said father's other child is with paternal grandparents and would "like an assessment to be done for any form of future necessities."

The court found a prima facie showing had been made that M.T. is a person coming under section 300 and that keeping M.T. in mother's home was contrary to M.T.'s welfare. The court ordered the Department to provide services to both parents: a parenting class, a substance abuse assessment and recommended treatment, random drug testing, a mental health assessment and recommended treatment, a domestic violence assessment and recommended treatment, and for father only, the batterer's intervention program that he had already been ordered to do as part of his probation.

The court set the combined jurisdictional and dispositional hearing for October 30 and placed M.T. with maternal great-aunt and uncle.

### III.    Jurisdiction and disposition

In its jurisdiction/disposition report (the report) filed October 30, the Department requested that the sole count in the section 300 petition be found true and that M.T. be found to be a person described by section 300, subdivision (b). The Department recommended that M.T. remain in her out-of-home placement and that mother and father be provided family reunification services.

According to the report, a social worker called paternal step-grandmother on October 11 to ask about father's whereabouts. According to step-grandmother, father

was released from jail and was out for about a day and a half before he was returned to jail. She reported that father was released to a residential program but left to go to another program. The other program had no room, so he was returned to jail. Step-grandmother said father did not want to give up parental rights, was a "great parent," and "wanted to be involved." She also said she and her husband were willing to take placement of M.T. but said maternal grandmother would be the "best placement option" as she had had M.T. in her care the longest.

The social worker met with father at the jail on October 17. He said he had court on October 23 and said that while incarcerated he wanted M.T. placed with maternal grandmother because he trusted her. He also said that paternal grandparents "would also be willing" to take placement of M.T. Father said he is a union worker and was currently "on relief." He stated he had housing and lived on a "shared property" with paternal grandparents. He further stated he was trying to enter a rehabilitation center for alcoholism.

Also on October 17, father told the social worker that he wanted placement of M.T. upon his release from jail. Father cried when the social worker read the "[h]arm statement" to him, stating he felt guilty for being incarcerated while M.T. needed him. Father agreed with the services objectives of the case plan. Father admitted domestic violence "a long time ago" with mother, but asserted he had never hit M.T.

The report asserted that there would be a substantial danger to M.T. if she were returned to mother's home. This was because mother has substance abuse issues and has not ameliorated the reasons that led to M.T.'s removal from her care. The Department recommended mother be provided family reunification services.

The report also considered placing M.T. with father as a nonoffending, noncustodial parent. The report noted father had a history of substance abuse and a "history of domestic violence with the mother." The report also stated father was still in jail on a probation violation and had been "in and out of jail" "due to probation

6.

violation." The Department noted that father wanted "placement of [M.T.]" and was willing to participate in services, but said father was currently unable to care for M.T. because he was in jail. The Department also stated it was "worried about [father's] ability to provide care and support to [M.T.] due to his unstable lifestyle of incarceration." Thus, the Department recommended that M.T. not be placed with father under section 361.2, subdivision (a), and that father be ordered to participate in family reunification services: parenting classes, mental health assessment and recommended treatment, substance abuse assessment and recommended treatment, domestic violence assessment and recommended treatment, and random drug testing. The Department added that father had not begun to participate in any offered services due to his incarceration, but that the Department would continue to assess father for possible placement of M.T.

At the combined jurisdiction and disposition hearing on October 30, father's counsel stated that father was in jail and "[a]llegedly refused" to appear at the hearing. His counsel asserted that father "is requesting placement as a plan of care. Although the report went back and forth, the plan of care he has expressed to his attorney is the paternal grandparents, not the maternal grandmother." The juvenile court said it seemed from the report that father's "plan of care was maternal grandmother." And after listening to comments from mother's counsel, the court said it seems as though the parents "agree now on paternal grandparents being assessed for placement." The court then asked the Department to "continue a[ss]essing paternal grand[p]arents" for placement. The court added, "It is this court's position in this case and in all cases that a plan of care is something more than saying a plan of care. A plan of care is an actual plan and so there needs to be something more than a statement of this [is] where I want the person to go. This is where I want the child to go. Just because a party take[s] [the] position that they would like placement with that person, that is not a plan of care."

Father's counsel responded that father has "full custody" of his 10-year-old son and that his son "is currently in a plan of care" with paternal grandparents while father is in jail. Counsel added that father lives on paternal grandparents' property. Counsel asserted that father had indeed "established" a plan of care for M.T., which would be placement with paternal grandparents while he is in jail. Counsel then added, "At this stage, if services are what is ordered for him, then he is . . . withdrawing the plan of care or placement. They are technically different. One of the things that I have been informed by other clients is Fresno County is now allowing services to be done within the jail." Finally, counsel stated that after having looked over father's criminal case, "there is a very good possibility that for a good portion of the six months that he could be incarcerated in Fresno County." Counsel made this statement in the context of father completing services while in jail.

The court added to its prior statements about a plan of care and said that it did not "have information about the paternal grandparents." It then found that the allegations contained in the section 300 petition were true and thus M.T. is a person coming under section 300, subdivision (b). It removed M.T. from mother's custody under section 361, subdivision (c)(1), finding that returning M.T. to mother's home would pose substantial danger to M.T.

The court recognized that father as the noncustodial parent desired custody of M.T. However, the court determined, "based upon the information contained in the report," that "there is clear and convincing evidence that placement with [father] would be detrimental to the safety protection or physical or emotional well-being of [M.T.]." The court ordered that M.T. remain in her current placement and stated that it "has considered placement with relatives and cannot make a determination at this time."

The court ordered visitation and reunification services to mother and father and set a six-month review hearing for April 23, 2025. After the hearing, the court entered a written order tracking its oral pronouncement.

Father timely appealed.

## DISCUSSION

Father contends the juvenile court erred by failing to state the basis for its determination under section 361.2, subdivision (a), that it would be detrimental to place M.T. with him. He also contends the determination was not supported by substantial evidence. We reverse on the first ground and thus need not address the second.

## I.    Law

The statute governing father's request that M.T. be placed in his custody is section 361.2. Subdivision (a) of the statute provides, in relevant part: "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).)

"The term ' "custody" ' as used in section 361.2, refers to the parent's 'right to make decisions pertaining to the child' and to have 'legal possession of the child.' [Citation.] ' "Placement" ' refers to 'where the child shall live during the dependency proceeding.' [Citation.] Thus, under section 361.2, subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under section 361.2, subdivision (b), the court decides whether that placement should be permanent and whether the court's jurisdiction should be terminated." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 368 (*Noe*).)

" '[W]hen a noncustodial parent is incarcerated, the [dependency] court must proceed under section 361.2 to determine whether the incarcerated parent desires to assume custody of the child. Unlike section 361.5, section 361.2 does not distinguish

9.

between an offending and nonoffending parent, and the court applies section 361.2 without regard to the characterization of the parent as offending or nonoffending.' [Citation.] If a noncustodial, incarcerated parent seeks custody of the child, the court must determine whether placement with that parent would be detrimental to the child's safety, protection, or physical or emotional well-being. (§ 361.2, subd. (a).) Among the factors in determining detriment are the noncustodial, incarcerated parent's ability to make appropriate arrangements for the care of the child and the length of that parent's incarceration." (*Noe*, *supra*, 213 Cal.App.4th at p. 368.)

However, " '[t]here is no "Go to jail, lose your child" rule in California. [Citation.]' [Citation.]" (*Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 672.) "Section 361.2, subdivision (a) does not automatically exclude from consideration for placement a noncustodial parent who has a history of incarceration, institutionalization or prior involvement with child dependency proceedings. Instead, it directs the court to place the child with the parent unless placement would be detrimental to the child." (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504; see *In re Isayah C.* (2004) 118 Cal.App.4th 684, 700 [finding the father's incarceration not sufficient to show detriment, citing "the case law holding that the juvenile dependency system has no jurisdiction to intervene when an incarcerated parent delegates the care of his or her child to a suitable caretaker"]; *In re V.F.* (2007) 157 Cal.App.4th 962, 973 ["The mere fact a noncustodial parent is incarcerated does not relieve the court of its obligation to determine whether the incarcerated parent is seeking custody of the child and, if so, whether placement with that parent would be detrimental to the child" under § 361.2], undermined in part on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 53–54, 57–58.)

" '[T]o comport with the requirements of the due process clause [of the federal Constitution], a finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence.' " (*In re Abram L.* (2013) 219 Cal.App.4th 452, 461.) "Clear and convincing evidence requires 'a high probability, such that the evidence

10.

is so clear as to leave no substantial doubt.' " (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1401.) "The nonoffending parent does not have to prove lack of detriment. Rather, the party opposing placement with a nonoffending parent has the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody." (*Id.* at p. 1402.) When making this detriment determination, the court "shall make a finding, either in writing or on the record, of the basis for its determination." (§ 361.2, subd. (c).) Section 361.2, subdivision (c), has been interpreted as requiring "express finding[s] in support of that decision." (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1071 (*J.S.*); see *id.* at p. 1079.)

Section 361.2, subdivision (c)'s requirement for express findings serves important functions. "An express finding on a contested issue—or a statement of reasons for a judicial decision—can shape and improve the adjudicatory process through either or both or two mechanisms. First, it can directly influence the trial court's actual reasoning process by compelling it to consciously consider and resolve specified issues. Second, it can enhance appellate review of the trial court's reasoning by making that reasoning explicit and reducing, if not eliminating, the role of inference on appeal. Ordinarily, of course, appellate courts will indulge all reasonable inferences favorable to the judgment. But this familiar doctrine becomes potentially subversive where the Legislature requires the trial court to make an express finding. Such a requirement may be deprived of all force if appellate courts feel free to infer a supporting finding where the trial court has left the record silent. For that reason the doctrine of implied findings may be given limited scope where an express finding is required." (*J.S.*, *supra*, 196 Cal.App.4th at p. 1078, italics omitted.)

"The same cannot be said, however, of another familiar barrier to appellate reversal: the rule of harmless error. Before any judgment can be reversed for ordinary error, it must appear that the error complained of 'has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) Reversal is justified 'only when the court, "after an

11.

examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citations.] A reasonable probability for these purposes does not mean an *absolute* probability; the likelihood that the error affected the outcome need not be greater than the likelihood that it did not. [Citation.] The test is satisfied, and prejudice appears, if the case presents 'an equal balance of reasonable probabilities.' " (*J.S.*, *supra*, 196 Cal.App.4th at pp. 1078–1079.)

## II.    Analysis

We first conclude the juvenile court erred by not making express findings to support its detriment determination. (§ 361.2, subds. (a), (c).) The court recognized that father, as the noncustodial parent, requested custody of M.T. as M.T. was being removed from mother's custody under section 361. Though the court did not specifically reference section 361.2, it is clear from the context of the court's statements and discussion of the issues that the court was analyzing father's request under section 361.2.[3] As to father's request, the court said, "[T]here is clear and convincing evidence that placement with [father] would be detrimental to the safety protection or physical or emotional well-being of [M.T.]." The court stated this finding was "based upon the information contained in the report." The court did not reference any specific part of the jurisdiction/disposition report, which was 74 pages long, including attachments.

The court's blanket reference to the report, without further explanation for the basis of its detriment determination, does not satisfy section 361.2, subdivision (c)'s, mandate for express findings. The statute requires explicit, particularized findings that demonstrate the reasoning behind the court's decision. A general nod toward a large body of material, like the report here, does not suffice. The report contained mixed

---

[3] We thus reject father's assertion that it is unclear whether the juvenile court applied the correct statute, section 361.2.

12.

evidence, including information that could support placing M.T. with father. The court thus had to explain which parts of the report it found persuasive and why. Section 361.2, subdivision (c) facilitates conscientious decision-making and meaningful appellate review, and the court's generic reference to the report frustrated these purposes. (*J.S.*, *supra*, 196 Cal.App.4th at p. 1078.)

We next address the issue of prejudice. We conclude there is a reasonable probability that had the trial court complied with the statutory requirement, it may have answered differently the question whether placing M.T. with father would be detrimental to M.T. The Department in the report recommended that M.T. not be placed with father under section 361.2, subdivision (a). This was because of father's "history of substance abuse (alcohol and cocaine)," his "history of domestic violence" with mother, and his current incarceration for a probation violation in his domestic violence case. The Department noted father wanted placement of M.T. and was willing to participate in services, but it stated that he was currently unable to care for M.T. because he was in jail. The Department also said it was "worried about [father's] ability to provide care and support to [M.T.] due to his unstable lifestyle of incarceration."

However, there were also facts that weighed against a finding of detriment. Most importantly, father currently had custody of his 10-year-old son that he had with another woman. His son lived with father at paternal grandparents' home, and paternal grandparents were caring for the boy while father was in jail. Father lived on the same property as paternal grandparents. Also, father's counsel asserted at the jurisdiction/disposition hearing that father's plan was to have M.T. placed with paternal grandparents, and the report stated that paternal grandparents were willing to take placement of M.T. Paternal step-grandmother said that she "loves [M.T.]" and that she and her husband (paternal grandfather) were willing to take placement of M.T. The

13.

Department presented no evidence that paternal grandparents were unfit to take placement of M.T., even though it was their burden to prove detriment.**4**

Further, though father was in jail for domestic violence, this was the only criminal conviction he had ever suffered. He denied ever abusing M.T., and there was no evidence that he ever did. Indeed, the Department deemed him a "non-offending" parent. Based on his counsel's comments, at the time of disposition, he had only a few more months to serve in jail. It was not as if he were facing a long incarceration in state prison on that case. Father also told the Department he wanted to enter a rehabilitation program even though he claimed to be sober, which demonstrated insight and responsibility. This was in addition to expressing willingness to participate in services.

In light of these facts cutting against the court's detriment finding, we conclude there is a reasonable probability the juvenile court could have reached the opposite finding had it complied with section 361.2, subdivision (c)'s requirements.

---

**4** Also to this point, the juvenile court seemed to fault father at the jurisdiction/disposition hearing when it said it did not "have information about the paternal grandparents." The court made this comment in the context of its determination that it would be detrimental to M.T. to be placed with father. But father mentioned paternal grandparents as a potential placement in his first meeting with a social worker on September 23, and the social worker said that paternal grandparents "can be assessed" for that purpose. There is no evidence paternal grandparents made themselves unavailable to the Department. On remand, the court should remember that under section 361.2, " 'the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child.' [Citation.] . . . It is the burden of the party or parties opposed to such placement to prove detriment by 'clear and convincing evidence.' " (*In re K.B.* (2015) 239 Cal.App.4th 972, 979.)

Father also could not be faulted for not asserting paternal grandparents as his first choice for placement until the disposition hearing. This is because section 361.2, by its terms, becomes applicable only upon removal of the child from the custodial parent. He thus did not need to make any advance request, so to speak, under section 361.2.

14.

### III. No forfeiture

The Department argues that, at the jurisdiction/disposition hearing, father's counsel withdrew his request for placement under section 361.2 when she stated, "At this stage, if services are what is ordered for him, then he is . . . withdrawing the plan of care or placement." We do not interpret this isolated and somewhat ambiguous statement as a withdrawal of father's request for custody. Nothing else in the record suggests that such a withdrawal was intended, and there is no apparent reason why father's counsel would have taken that position. Viewed in context, the statement appears to mean that if the court denied father's request for custody, he would no longer pursue placement with paternal grandparents—a logical position, given that father lived on the same property as the grandparents.

### DISPOSITION

The juvenile court's dispositional order dated October 30, 2024, is reversed in part. The determination under section 361.2 that placing M.T. with father would be detrimental to M.T.'s safety, protection, or physical or emotional well-being is reversed. The case is remanded to the juvenile court with directions to hold a new dispositional hearing to consider placing M.T. with father under section 361.2. Nothing in this opinion is intended to foreclose the court from considering new evidence or changed circumstances that may have arisen during the pendency of this appeal. Following that hearing, the court is ordered to make the specific findings required by section 361.2, subdivision (c).

In all other respects, the dispositional findings and orders are affirmed.

15.